Morphy, J.
This suit was brought on the 27th of November, 1839, against the estate of the late Hardin L. Tilghman,, on a judgment obtained by Boggs, Cochran & Co., against the deceased, and one John H. Cornish, in Lauderdale county, Alabama, on the 4th of October, 1824. The defence set up by the curator of the estate is prescription, and payment or satisfaction of the judgment sued on. The record shows, that a few days after the rendition of this judgment, an execution was sued out, on which a return of nulla bona was made, op the 30th of March, 1825, and that *392 since that time no execution has been issued on it, nor any other step taken to enforce its payment; that, in 1827, Hardin L. Tilghman came to this State where he settled ; and that he died in this city, on the 7th of March, 1839, possessed of property to a considerable amount.
We are of opinion that the plea of prescription cannot be sustained. By reason of the absence of Boggs, Cochran <fc Co. from this State, sufficient time has not elapsed since the return of the execution in Alabama, to bar the action on the judgment. Civ. Code, art. 3508. As to that of payment, the curator has invoked a statute of Alabama given in evidence below. The third section of that statute provides : “ That when any execution shall have been issued on any judgment or decree of the Supreme Court, &c., within a year and day after the rendition of any such judgment, or the making of any such decree, which shall not have been returned satisfied in full, it shall and may be lawful, at any time thereafter, to issue execution on any such judgment or decree, without suing out any scire facias or other process to revive the same; and when an execution shall have been issued or sued out on any such judgment or decree, within a year and a day from the rendition of any such judgment, or the making of any such decree, which shall not have been returned satisfied in full, such judgment or decree shall not afterwards be presumed to be paid or satisfied, without payment or satisfaction be entered on the record of the court in which such judgment or decree shall have been rendered or made, &c., unless no execution shall be issued on such judgment or decree for the space of ten years, any law, usage, or custom to the contrary notwithstanding.” Aikin’s Alabama Digest, p. 621, § 3.
We do not consider this law as absolutely barring the right of action on the judgment, either in Alabama or in Louisiana; but it clearly establishes a legal presumption of payment or satisfaction in favor of the debtor, when the creditor, after suing out within a year and a day from the rendition of the judgment, an execution which is not returned satisfied in full, remains for the space of ten years, without suing out an execution on such judgment. The burden of proving that the judgment has not been satisfied is, after the space of ten years, thrown on the creditor, *393 who seeks to recover on it by an action of debt. This section is materially different from the following one in the same law, which provides, that when an execution has not been issued within a year and a day, the plaintiff can have a scire facias against the defendant to show cause why he should not have execution of his judgment. Ib. 4th sec. p. 622. In the latter case, the burden of proof is clearly on the debtor, who must show payment, release, or some other mode of satisfaction; while in the former, the law raises such a presumption of payment from the fact of the judgment having been suffered to remain dormant for the space of ten years, that the debtor, when sued, may rest his defence on such presumption, until it be rebutted by proof to the contrary. If the intention had been that, in both cases, the plaintiff should be allowed a scire facias calling, on the defendant to show cause why execution should not be issued, the fourth section of the law would have so declared ; but it seems to have been passed to remove doubts which existed as to the creditor’s right to a scire facias, even in the case where no execution had issued within the year and day after the rendition of the judgment. See preamble to the 4th section. The effect of a legal presumption is, to relieve the party in whose favor it exists from the necessity of making any proof; but this presumption may be destroyed by proof that the fact is otherwise than the law presumes it tobe. It is different with regard to presumptions juris et de jure ; they establish so completely the fact presumed, that no proof to the contrary can be admitted. If the judgment sued on is saddled in Alabama'with a legal presumption of payment, this presumption attaches to and accompanies it here, when it is made the basis of a suit. The constitution of the United States, art. 4, sec. 1, declares, that “full faith and credit shall be given in each State to the public acts, records and judicial proceedings of every other State.” From this clause of the constitution, and the act of Congress passed in pursuance of it, we understand that judgments from other States, properly authenticated, must have in this State the same effect which they would have in the States in which they were rendered ; but surely they can have no other or greater force or effect. V7e have looked in vain into the record for any acknowledgment by the obligor, or *394 any other proof tending to destroy the presumption of payment created by the laws of Alabama. Until this presumption is rebutted, the judgment sued on must be held to have been paid or satisfied, in the same manner as if payment or satisfaction had been entered on the record of the court which- rendered it.
It is, therefore, ordered, that the judgment of the Court of Probates be reversed, and that ours be for the appellant, as in a case of nonsuit; the appellees to pay the costs in both courts*

 Anderson, for a re-bearing. The- statute of Alabama is entitled, “ An act to authorize the-issuance of executions, and for other purposes.” It was passed in the year 1835, nearly ten years after the rendition of the judgment sued on. The third and fourth sections should be taken together. They prescribe the following rules : 1st. A plaintiff may have execution within the year, of his own mere motion. 2d. He may, if an execution be returned unsatisfied, have an alias execution at any time within ten years, of his own mere motion; hut if more than ten years shall elapse, then he may have it by issuing a scire facias. 3d. If he do not sue out execution within the year, he may, nevertheless, have execution at any time by scire facias. It applies exclusively to- the right of execution, requiring the preliminary proceeding by sci) e facias where no execution had been issued within the year, and where an execution had been issued and no alias had followed for the space-of ten years.
By the common law, or rather by the statute of Edward I. if no execution issued -within the year, there was a presumption of payment; but this presumption extended no farther, than to require the plaintiff to give the defendant an opportunity of showing that he had paid ; and therefore, he was required to issue a scire facias, or commence an action of debt on his judgment, which he might do. 2 Tidd’s Pr. 1002.
When the scire facias issued or an issue was made in the action of debt, the plaintiff was required only to show the existence of his judgment. He was not called on to repel the presumption of payment. That presumption had done its office, when it secured to the defendant the right of showing that he had paid the debt contrary to what the record avouched. This is obvious from the nature of a scire facias, which is a writ commanding the Sheriff to make known to the defendant, that there exists against him a debt of record, and that he show cause, if he can, why an execution should not issue thereon. So, if an action of' debt were commenced, the plaintiff was bound to show his judgment, and nothing more. After the year, no execution having issued, there was a presumption of payment ; but the force and effect of it was confined to the right of execution. Suppose an action of debt, after the year, no execution having issued, can it'be believed that anything more than the record evidence of the debt, would be necessary to his right to recovery ? And yet the presumption of payment attaches immediately after the year when no execution has issued, as it does immediately after ten years *395 ivhen an execution has once issued and no further proceedings have been taken for that space of time.
Had this case then been tried in the State of Alabama, the record in the suit would have entitled the plaintiff to recover without any further evidence, although the presumption of payment would have taken from him the right to have an execution, of his own mere motion.
This is the construction given to this statute in Alabama. But whatever 'construction may be given to it, a court of this State, affording a remedy according to the law of this State, can give no weight to a statute of Alabama prescribing a rule of procedure and nothing else. The opinion pronounced in this case, -overrules all those decisions which affirm that -the law of the forum governs the remedy, and that the course of procedure must be according to that law.
But suppose the statute to create a presumption of payment applicable to the •debt for all purposes, what, in principle, does it do more than a statute of limitations ? The former, it is said, prescribes an arbitrary relation between time and payment, which may he rebutted ; the latter prescribes the same relationship, which may not be rebutted. They are identical in principle, and differ only in effect, the one being a presumption de facto, the other de jure. If our courts will not govern their remedies by a foreign statute of limitations, is there any reason why they should govern them by a foreign statute, founded on a principle entirely similar ?
Considering the Alabama statute as creating a presumption, it must be considered as directory to the courts of that State, to take for true, that which, without the statute, could not be considered as judicially established. Is such a law one that we can recognize ? Is it a law that can operate extra-territorially ? The question cannet admit of doubt. The law of the forum governs. Suppose a question of survivorship to arise in our courts, between litigants residing in another State. Suppose that by the law of their domicil, a person of forty was presumed to survive a person of sixteen, when both had been lost at sea; and that by our law tito presumption was directly the reverse. Gau there be any doubt, that in such a case our courts would be governed by the presumptions created by our law, and not by the law of the domicil of the litigants? The common law requires only one witness to establish a fact — the eivil law requires more. Our courts would not adopt a different mode or degree of proof according as the contract arose here, or in a common law State. By our law a child cannot testify for a parent. Would our eourts receive such evidence, if it were shown that the contract originated in a common law State, where the child would certainly be a competent witness 1 “ There are many instances,” says Sir William Grant, “ in which principles of law have been adopted from the Civilians by our English courts of justice, but none that I know of, in which they have adopted pre sumptions of fact, from the rules af the civil law.” Judge Story says, (Conflict of Laws, 526,) “ it is a general truth, that the admission of evidence, and ruies of evidence, are matters of procedure, and are therefore, to be governed by the laws of the country where the court sits.” Lord Brougham in the case of Don v. Lepmann, says “ Whether payment is to be presumed, or not, depends on the law of the country in which the law is set-in motion to enforce the agreement; and so must all questions of the admissibility of evidence; and that clearly brings us home to the statute of limitations.”
The statute in question was passed in 1835, and the judgment sued on was ob *396 tained in 1824. This suit was commenced about four years after the statute was passed in Alabama. Now if the statute be considered as affecting the judgment, it would be giving it a retroactive force, for the judgment was prior to the law ahout ten years. Considered as a rule of evidence binding on the courts of Alabama, it would not have defeated the plaintiff’s action in that State. The presumption of payment arises from a silence of ten years. This must mean ten years after the act passed. Wow this suit was commenced within four years after the enactment of that law. But there remains a question of much greater importance to be discussed. The court say, that this statute was permitted to operate on the case, because the constitution and laws of the United States required them so to decide ; that this constitution and these laws are paramount, and onr courts are not at liberty to disregard their requirements. The several States of this Union are, sub modo, sovereign and independent. When the general government acts, it acts as sovereign ; and and whatever it acts upon, whether states or individuals, it must needs act upon them assubjects. But the states where they act, do also act in asovereign capacity, and as to all powers retained are as before the constitution. That instrument did not change the nature of their power, but took certain interests out of the scope of its operation. The Legislature therefore, of one State is as independent of the Legislature of every other, as each is of the Legislature of France or England. There is no clause in the constitution that gives any force and effect to the laws of one State within the territory of another — the doctrine asserted for the first time in the opinion delivered by the court in this case. A moment’s reflection will show what important results flow from it. If Congress may prescribe the force and effect that the laws of one State may have in every other, then our legislation in all cases may become subservient to the legislation of some other State with the concurrence of the Congress of the United States. The court, no doubt, had in view the first section of the fourth article of the constitution, and the act of Congress of 26 May, 1790, made in pursuance thereof. That section declares, “ that full faith and credit shall be given in each State to the public acts, records and judicial proceedings of every other State ; and the Congress may by general law prescribe the manner in which such acts, records and proceedings shall be proved, and the effect thereof.” The act of 1790 after prescribing the mode of authentication, declares the force and effect of judgments and judicial proceedings, but does not declare the effect of legislative acts. If, therefore, the clause in the constitution giving the power to declare the force and effect applies to legislative acts, it is quite certain that Congress has not exercised the right, for the act of 1790, and the supplemental act of 1826, do not pretend to declare that the legislative acts of one State shall have any force, as laws, in any other State.
But that clause in the constitution was never intended to confer such a power. It appears by the-jouinals of the convention, that the, amended report of this article read thus : “ And the effect, which judgments obtained in one State shall have in another;” that this clause was stricken out, and the words “the effect there, of,” werC-inserted. The clause as thus amended, passed without a division. It would seem,-therefore, that the words were supposed to have an identical meaning.

Re-hearing refused.